VICULIN v. DEPARTMENT OF CIVIL SERVICE

1. ADMINISTRATIVE LAW—CIVIL SERVICE COMMISSION—QUASI-JUDICIAL BODY—CONSTITUTIONAL LAW.

   The Michigan Civil Service Commission is an administrative agency existing under the constitution and is a "quasi-judicial" body (Const 1963, art 11, § 5).

2. WORKMEN'S COMPENSATION—APPEAL AND ERROR—CONSTITUTIONAL LAW.

   A workmen's compensation commission is established nowhere in the constitution nor is there any guarantee of a constitutional right to workmen's compensation; yet it is clear from a consti-

REFERENCES FOR POINTS IN HEADNOTES
[1, 3–20]  15 Am Jur 2d, Civil Service § 36 *et seq.*
[2]  58 Am Jur, Workmen's Compensation § 522 *et seq.*

tutional provision that review of workmen's compensation determinations are within the purview of that article of the constitution (Const 1963, art 6, § 28).

3. ADMINISTRATIVE LAW—CONSTITUTIONAL LAW—CIVIL SERVICE COMMISSION—APPEAL AND ERROR.

Final decisions of the Civil Service Commission sustaining the dismissal of an employee were intended to be within the purview of an article of the constitution which provides in part "All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law" (Const 1963, art 6, § 28).

4. ADMINISTRATIVE LAW—CONSTITUTIONAL LAW—APPEAL AND ERROR —TRIAL DE NOVO.

A section of the constitution provides that final decisions of certain administrative officers or agencies shall be subject to direct review by the courts and "this review shall include, as a minimum, the determination whether such final decisions, findings, rulings or orders are authorized by law * * * supported by competent, material and substantial evidence on the whole record"; to read the language as requiring a trial *de novo* or the taking of additional testimony in circuit court does violence to the clear language of the provision and the limited minimum review dictated as, elsewhere in the constitution, the drafters were quite careful to utilize the term *de novo* where that form of review was intended (Const 1963, art 6, § 28).

5. ADMINISTRATIVE LAW—CONSTITUTIONAL LAW—APPEAL AND ERROR —CIVIL SERVICE COMMISSION—DE NOVO REVIEW.

The constitutional provision for review of rulings and orders of administrative officers or agencies applies to final decisions of the Civil Service Commission; it neither guarantees nor permits *de novo* review of final decisions of the state Civil Service Commission as the scope of review is that stated by the constitution, "whether the same are supported by competent, material and substantial evidence on the whole record" (Const 1963, art 6, § 28).

6. ADMINISTRATIVE LAW—APPEAL AND ERROR—CONSTITUTIONAL LAW —CERTIORARI.

The constitutional provision providing for review of rulings and orders of administrative officers or agencies does not guarantee a review in the nature of certiorari of "right" but an

appeal of such a nature may require "leave" or be automatic as provided by law (Const 1963, art 6, § 28).

7. ADMINISTRATIVE LAW—CIVIL SERVICE COMMISSION—ADMINISTRATIVE PROCEDURES ACT—COURT RULE.

Neither the provisions for administrative or judicial review of the administrative procedures act were applicable to Civil Service Commission proceedings prior to the adoption of a court rule providing for that method for appeal (MCLA § 24-.108; GCR 1963, 706.3).

8. CONSTITUTIONAL LAW—CIVIL SERVICE COMMISSION—REVIEW OF GRIEVANCES—LEGISLATURE.

The Civil Service Commission is a constitutional body possessing plenary power and may determine, consistent with due process, the procedures by which a state civil service employee may review his grievance; the legislature is consequently without power to regulate the internal procedures of the Civil Service Commission and this fact is recognized in a section of an article of the constitution (Const 1963, art 4, § 48; art 11, § 5).

9. CONSTITUTIONAL LAW—CIVIL SERVICE COMMISSION—ADMINISTRATIVE PROCEDURES ACT.

The administrative procedures act, if it was intended to apply to the resolution of disputes in the state classified civil service would be in violation of a provision of the constitution that "The legislature may enact laws providing for the resolution of disputes concerning public employees, except those in the state classified civil service"; therefore, it cannot apply to the internal procedures of the Civil Service Commission and since the act is to be read together it cannot be concluded that only the section providing for appeal was intended to apply to the Civil Service Commission (Const 1963, art 4, § 48; MCLA § 24.101 *et seq.*).

10. ADMINISTRATIVE LAW—CIVIL SERVICE COMMISSION—APPEAL AND ERROR—STATUTES—COURT RULE.

Statute providing for review in circuit court of decisions of boards, commissions or agencies authorized to make rules from which an appeal or other judicial review has not heretofore been provided by law is a method of review "provided by law" and was applicable to a final decision of the state Civil Service Commission affirming an employee's discharge from state employment prior to the adoption of a court rule governing such appeals (MCLA § 600.631; GCR 1963, 706.3).

11. Administrative Law—Appeal and Error—Civil Service Commission—Court Rules—Failure to Object.

Jurisdiction was proper in view of the liberal provisions of the court rule providing for delayed appeal and because appellee made no objection either to the time in which the appeal was taken or the failure to secure an order and any technical error was also vitiated by the abundant confusion surrounding the appeal process from Civil Service determinations, although there was technical error below where appellant should have filed his petition for review within ten days of the decision of the Civil Service Commission and the petition was filed well beyond the limit (GCR 1963, 702.1).

12. Appeal and Error—De Novo Review—Revised Judicature Act—Civil Service Commission.

Appeals from justice courts are appeals from a judicial body exercising judicial functions whereas an administrative agency, though it may be acting in a quasi-judicial capacity in the performance of its function is nonetheless exercising the non-judicial function of a coordinate branch of government; therefore, contention that an appellant is entitled to *de novo* review of a Civil Service Commission determination under the Revised Judicature Act since appeals thereunder are to be taken "in the same manner" as appeals from justice court from which there is *de novo* appeal is untenable (MCLA § 600.631).

13. Administrative Law—Civil Service Commission.

The Michigan Civil Service Commission has plenary and absolute powers in its field.

14. Administrative Law—Quasi-Judicial Proceedings—Notice.

One who is brought into a contest with the government in a quasi-judicial proceeding is entitled, among other things, to be fairly advised of what the government proposes.

15. Administrative Law—Statement of Charges—Notice—Civil Service Commission.

Civil Service Commission report of the separation of an employee constituted adequate notice and reasonably definite statement of the charges where it incorporated by reference the underlying factual basis in the rating reports previously received by the employee.

16. Administrative Law—Civil Service Commission—Hearing—Witnesses—Documents.

For an adversary hearing of the nature of a Civil Service Commission hearing concerning termination of employment to

have any meaning, the employee must have a reasonable opportunity to meet the agency's case; for this reason, reasonable and timely requests for lists of witnesses and inspection of documents should be complied with by the agency.

17. ADMINISTRATIVE LAW—HEARING—EVIDENCE—DOCUMENTS—WITNESSES.

Although the agency should have attempted to comply with a request to produce certain documents before the issue was raised during a Civil Service Commission hearing regarding an employee's discharge, it is also noted that the request was not timely made where it was made one day before the hearing and, absent proof that the requested skeleton files were not produced over recess, it must be assumed that the employee was not prejudiced in his ability to cross-examine witnesses and meet the agency's case.

18. ADMINISTRATIVE LAW—EVIDENCE—CIVIL SERVICE COMMISSION.

Standards for admission of evidence in administrative proceedings are not the same as those in courts of law and the Civil Service Commission as a constitutional body possessing plenary power to determine the procedure for review of employee dismissal may receive and consider evidence which would not be competent in court proceedings and its decision must be sustained if supported by competent, material and substantial evidence on the whole record.

19. ADMINISTRATIVE LAW—CIVIL SERVICE COMMISSION—EVIDENCE.

Evidence of unsatisfactory ratings or charges of an employee's unsatisfactory work under previous supervisors would be relevant and material at a Civil Service Commission hearing where one of the defenses was that the employee's discharge was motivated by a personal animosity between the employee and his supervisor and that his work record under previous supervisors was satisfactory.

20. ADMINISTRATIVE LAW—APPEAL AND ERROR.

The importance of the requirement that an agency or commission must articulate with clarity and precision its findings and the reasons for its decisions is inherent in the doctrine of judicial review which places only limited discretion in the reviewing court and courts are indulgent toward administrative action to the extent of affirming an order where the agency's path can be discerned even if the opinion leaves much to be desired.

Appeal from Court of Appeals, Division 2, Quinn, P. J., and V. J. Brennan and Ziem, JJ., affirming

Ingham, Donald L. Reisig, J. Submitted September 17, 1971. (No. 51 June Term 1971, Docket No. 53,106.) Decided December 21, 1971.

27 Mich App 336 affirmed.

Donald Viculin appealed to the Civil Service Commission from his dismissal from employment with the Department of Education. Dismissal affirmed. Plaintiff appealed to the Ingham Circuit Court. Affirmed. Plaintiff appealed to the Court of Appeals. Affirmed. Plaintiff appeals. Affirmed.

*William L. Mackay,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Charles D. Hackney,* Assistant Attorney General, for defendant.

WILLIAMS, J. This case presents two broad issues for the Court's consideration. The first concerns the method and scope of judicial review of final decisions of the State Civil Service Commission; the second concerns the propriety and sufficiency of the administrative procedures and evidence by which appellant was discharged from state employ.

With respect to the method and scope of review the questions are:

A. Whether Constitution 1963, art 6, § 28 either guarantees or permits *de novo* review of a final decision of the State Civil Service Commission affirming appellant's discharge from state employment?[1]

B. Whether the administrative procedures act[2] provisions for either judicial or administrative re-

---

[1] See *infra,* IA.

[2] PA 1952, No 197 (MCLA § 24.101 *et seq.;* Stat Ann 1969 Rev § 3.560[21.1] *et seq.*) (hereafter § —— administrative procedures act.)

view are applicable to State Civil Service Commission proceedings?

C. Whether § 631 of the Revised Judicature Act[3] is a proper basis for review of decisions of the State Civil Service Commission?

With respect to the propriety and sufficiency of the procedures and evidence by which appellant was dismissed, the questions are :[4]

A. Whether appellant Viculin received a reasonably definite statement of the charge or charges against him in accordance with the rules of the Civil Service Commission and due process of law?

B. Whether appellant was afforded a reasonable opportunity to meet the agency's case against him?

C. Whether the Civil Service Hearing Board committed prejudicial and reversible error in receiving evidence of Viculin's 1964 conditional service rating which had been reversed by the Commission and in receiving evidence of two conditional service ratings received in 1961?

D. Whether the Civil Service Commission or the Hearing Board made proper findings of fact?

Appellant Donald Viculin was a Vocational Rehabilitation Division disability examiner with the Department of Education. On June 13, 1966, Viculin received an unsatisfactory "conditional interim service rating" which was appealed to a Hearing Board of the Michigan Civil Service Commission. Pending this appeal Mr. Viculin continued working and on December 8, 1966, he received an "unsatisfactory" service rating and was dismissed effective January 7, 1967, pursuant to Civil Service Rule 26.4 per-

---

[3] PA 1961, No 236, § 631 (MCLA § 600.631; Stat Ann 1962 Rev § 27A.631) (hereafter RJA § 631).

[4] The issue of whether the Civil Service Commission has complied with the portion of its opinion instructing the staff to make an effort to find other work for Viculin is not properly before this Court. There is no evidence on the record to provide any basis for judicial review.

mitting dismissal for receiving nonsatisfactory ratings in two successive rating periods.[5]  Viculin appealed this dismissal to the Civil Service Hearing Board pursuant to Civil Service Rule 33.4 permitting such bypass of his own agency upon application to the State Personnel Director.[6]

On February 3, 1967, the Hearing Board affirmed appellant's dismissal from state service and pursuant to Rule 33.10 relating to conduct of hearings[7] made the following "findings":

"1. Unnecessary long delays of cases.
"2. Lack of response to supervisor's help.
"3. Gross errors in case action.
"4. Carelessness in routine work.
"5. Poor case management at desk.
"6. Inability to acknowledge mistakes.
"7. Poor handling of invoices.

---

[5] References to Civil Service rules in the opinion are to *Rules of the Civil Service Commission*, September 15, 1965.  These rules have been amended three times since then, most recently on June 25, 1971.  The pertinent portion of Rule 26.4 follows:

"26.4 PENALTIES—An employee who receives a conditional service rating for one period and fails to achieve a satisfactory service rating for the subsequent rating period or an employee who receives one unsatisfactory service rating may be dismissed by the appointing authority."

[6] "33.4 APPEALS FROM APPOINTING AUTHORITY DECISIONS—All appeals regarding personnel decisions of appointing authorities or subordinate supervisors shall be made initially under the departmental grievance procedure, provided that upon the application of an employee or department the state personnel director may refer a dismissal appeal to a hearing officer or hearing board without prior action under the departmental grievance procedure."

Appellant Viculin was in this case allowed to bypass the departmental grievance procedure and take his case directly to the Hearing Board.

[7] "33.10 CONDUCT OF HEARINGS—The hearing officer or hearing board shall conduct the hearing informally, obtaining, considering and weighing, all evidence that fair-minded men, in the conduct of their important affairs, would obtain and consider.  The hearing officer or hearing board shall make findings of fact and, as may be appropriate, render a decision, issue an order, or make a recommendation to the commission.  Where a recommendation is made to the civil service commission, the state personnel director shall give written notice to the parties of the action taken by the commission."

"The evidence indicates that the employee's performance was inadequate over a considerable period of time. He had received fair notice of his deficiencies. On December 1, 1964, the Civil Service Commission had indicated that he should be given another chance to improve his performance. He has not performed acceptably in the essential areas set forth on the ratings of June 13, 1966 and December 8, 1966.

"The Hearing Board is satisfied that no effective change in the employee's performance could be expected if he were given a further period of probation.

"The Hearing Board affirms the dismissal."

Viculin appealed to the Civil Service Commission pursuant to Rule 33.11 providing for such action,[8] and, after full hearing on April 11, 1967, with arguments and briefs filed, the Commission informed plaintiff by letter dated April 12, 1967, that it affirmed the Board's decision but instructed the staff to make efforts to find plaintiff another civil service position for which he was qualified.

Appellant filed a "petition for review" in the Ingham Circuit Court. The trial court held that Const 1963, art 6, § 28 does not provide for *de novo* review, that jurisdiction was proper under either the administrative procedures act[9] or RJA § 600.631, that the findings of the Hearing Board and the Civil Service Commission were sufficient and that "on the whole record" appellant's discharge was procedural-

8 "33.11 APEALS FROM HEARING BOARD DECISIONS—All decisions of a hearing officer or hearing board may be appealed to the civil service commission. * * * In its discretion, the commission may decide the matter upon the basis of the hearing transcript and records involved, or may first call for further written statements or for personal appearances of the parties."

Appellant has no due process guarantee of a hearing before both the Civil Service Commission and the Hearing Board. See *Goldberg* v. *Kelly* (1970), 397 US 254, 267 (90 S Ct 1011, 25 L Ed 2d 287), at fn 14 ("Due process does not, of course, require two hearings.").

9 § 8 of the administrative procedures act; (MCLA § 24.108 Stat Ann 1969 Rev § 3.560[21.8]).

ly proper and supported by competent, material, and substantial evidence.

The Court of Appeals affirmed by *per curiam* opinion without discussing specifically the merits of the issues raised, but rather determining that on the basis of the whole record there was no denial of due process, *Viculin* v. *Department of Civil Service* (1970), 27 Mich App 336, 338.

## I. — *Method and Scope of Judicial Review*

A. *Applicability of Const 1963, art 6, § 28.*

Art 6, § 28 was a new and unique provision of the Constitution of 1963.[10]  It provides in pertinent part as follows:

"ADMINISTRATIVE ACTION, REVIEW. Sec. 28.  All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law.  This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record. Findings of fact in workmen's compensation proceedings shall be conclusive in the absence of fraud unless otherwise provided by law.

"In the absence of fraud, error of law or the adoption of wrong principles, no appeal may be taken to any court from any final agency provided for the administration of property tax laws from any decision relating to valuation or allocation."

_____

10 The Constitutional Convention Record pertaining to Proposal 95, the basis of art 6, § 28, indicates that the only other state with a similar provision at the time was Missouri.  For the history of Committee Proposal 95 and art 6, §28 see 1 Official Record, Constitutional Convention, 1440–1452, 1463–1478, 1483–1487.

Before the adoption of this provision we held in a continuing line of cases beginning with *In re Fredericks* (1938), 285 Mich 262, that final decisions of the Civil Service Commission were reviewable by the circuit court pursuant to the supervisory control over "inferior tribunals" vested in the circuit court under Const 1908, art 7, § 10.  We held, however, that an attempt by the legislature to create a review *de novo* would fail as an unconstitutional endeavor to foist non-judicial functions upon the courts and that review must consequently be in the nature of *certiorari*.  285 Mich 262, 267.

Appellant contends that art 6, § 28 was intended to change this and guarantees a right of *de novo* review of administrative decisions.  Appellee Civil Service Commission contends that art 6, § 28 is not applicable to these proceedings and, alternatively, that it does not contemplate a right of *de novo* review.  For the reasons stated below we hold that Const 1963, art 6, § 28 does apply to final decisions of the Civil Service Commission but that review shall not be *de novo*.

Art 6, § 28 by its terms would apply to any final decision of an "administrative   *   *   *   agency existing under the constitution   *   *   *  , which [is]   *   *   *   quasi-judicial and affect[s] private rights or licenses,   *   *   *  ."

The Michigan Civil Service Commission is an administrative agency existing under the constitution, Const 1963, art 11, § 5.[11]

---

[11] Dr. Melvin Nord, a convention delegate, wrote in *The Michigan Constitution of 1963; Judicial review of administrative decisions,* 10 Wayne LR, 309, 343, 344 (1964): "The extreme breadth of applicability of this provision should thus be noted.  For example, it is clear that this provision applies to 'constitutional' boards and commissions, and not only to legislatively created ones."

There are six administrative boards or commissions "existing" under the Constitution, as opposed to those which the Constitution gives the legislature power to establish.

The Civil Service Commission is a "quasi-judicial" body. *People, ex rel. Clardy,* v. *Balch* (1934), 268 Mich 196, 200; *In re Fredericks* (1938), 285 Mich 262, 266; *In re Doyle* (1945), 312 Mich 205, 210; *Goodfellow* v. *Detroit Civil Service Commission* (1945), 312 Mich 226, 232; and a continuing line of cases not cited here.

Counsel for appellee Civil Service Commission contends, however, that art 6, § 28 extends only to those administrative agencies which are quasi-judicial *and* "affect private rights or licenses." He argues that since a civil service employee does not have a constitutionally protected private right to his position that the quoted constitutional provision has no application. For this proposition he cites *Angilly* v. *United States* (CA2, 1952), 199 F2d 642, 644 and *Kelliher* v. *New York State Civil Service Commission* (1959), 21 Misc 1034 (194 NYS2d 89). In *Kelliher,* the Court held that there was no violation of due process in the termination of a civil service employee without a hearing in the absence of a statutory direction. See *Gaidamavice* v. *Newaygo Board of County Road Commissioners* (1954), 341 Mich 280, 288; *Detroit* v. *Division 26 of the Amalgamated Association of Street, Elec-Railway & Motor Coach Employees of America* (1952), 332 Mich 237, 247.

The more recent cases, however, hold that even though there may be no constitutional right to engage in certain activities or receive benefits, the government must still afford due process guarantees in terminating benefits. In *Goldberg* v. *Kelly* (1970), 397 US 254 (90 S Ct 1011, 25 L Ed 2d 287), for

1) The Commission on Legislative Reapportionment, Const 1963, art 4, § 6.
2) The State Highway Commission, Const 1963, art 5, § 28.
3) Civil Rights Commission, Const 1963, art 5, § 29.
4) The Judicial Tenure Commission, Const 1963, art 6, § 30.
5) The State Board of Education, Const 1963, art 8, § 3.
6) The Civil Service Commission, Const 1963, art 11, § 5.

example, the Court said that procedural rights with respect to the distribution of public assistance benefits cannot be avoided by contending that such benefits are "a privilege and not a right," 397 US 254, 262. The Court held that welfare benefits could not be cut off without a pre-termination hearing meeting the fundamental requisites of due process of law— an opportunity to be heard at a meaningful time and in a meaningful manner.[12]

This distinction was previously noted by the Court in *Cafeteria & Restaurant Workers Union* v. *Mc-Elroy* (1961), 367 US 886, 894 (81 S Ct 1743, 6 L Ed 2d 1230):

"The question remains whether Admiral Tyree's action in summarily denying Rachel Brawner access to the site of her former employment violated the requirements of the Due Process Clause of the Fifth Amendment. This question cannot be answered by easy assertion that, because she had no constitutional right to be there in the first place, she was not deprived of liberty or property by the superintendent's action. 'One may not have a constitutional right to go to Baghdad, but the Government may not prohibit one from going there unless by means consonant with due process of law.' *Homer* v. *Richmond* (1961), 110 US App DC 226, 292 F2d 719, 722."[13]

---

[12] The issue of whether a government employee is entitled to a *pre-termination* hearing has not been raised in these proceedings and is therefore not considered by the Court. We note, however, that the Supreme Court in *Goldberg, supra,* distinguished the suspension of welfare benefits without a hearing from the summary dismissal of a government employee in *Cafeteria & Restaurant Worker's Union* v. *McElroy* (1961), 367 US 886 (81 S Ct 1743, 6 L Ed 2d 1230). In that case an employee working on a government reservation was excluded from her place of employment without a hearing because her security clearance was withdrawn. Whether the case is distinguishable as involving the supremacy of the war power is a matter of conjecture. See *Goldberg, supra,* 263 at fn 10.

[13] Other cases suggesting the erosion of this "privilege" doctrine are:

Further reasons to reject this construction of art 6, § 28 can be found in both the language of the amendment and the Constitutional Convention Record.

Art 6, § 28 makes reference to two exceptions in the scope of review provided for therein. Without quibbling over whether there is any "right" in a particular tax assessment, we can focus on the exception relating to workmen's compensation proceedings. Nowhere in the constitution is there established a workmen's compensation commission nor is there any guarantee of a constitutional right to workmen's compensation. Yet it is clear from the provision itself that review of workmen's compensation determinations are within the purview of art 6, § 28.

Art 6, § 28 was originally Committee Proposal 95 and in the discussion of and amendments to that proposal, it was assumed without controversy that actions by the Civil Service Commission were contemplated within the section. The Civil Service

---

*Sokol* v. *Public Utilities Commission* (1966), 65 Cal 2d 247 (418 P2d 265, 53 Cal Rptr 673) (No constitutional right to telephone service but customer still entitled to an opportunity to a hearing before an order may issue to discontinue service because of alleged unlawful activity); *Scott* v. *Macy* (1965), 121 App DC 205 (349 F2d 182) (Government's argument that exclusion of an applicant from public employment is justified because no basic right was rejected as too broad. Although there is a difference between one who is an applicant for public employment or benefit and one who is already an employee, applicant still entitled to judicial review).

*Gonzalez* v. *Freeman* (1964), 118 App DC 180 (334 F2d 570). (Although a person has no constitutional right to do business with the government, debarment from participating in government contracts has substantial economic consequences and the interruption of an existing relationship places petitioner in a *different* posture *from one* initially seeking government contracts. He is *entitled to challenge the process and the evidence before* he is officially *declared ineligible* for government contracts.)

*Homer* v. *Richmond* (1961), 110 App DC 226 (292 F2d 719). (Applicant for radio-telegraph license is entitled to an opportunity consistent with due process to test the factual accuracy of the grounds upon which denial is placed.)

See also 1 Davis, *Administrative Law*, §§ 7.12, 7.12–1 (1970 Supp).

Commission was mentioned three times in the first discussion of Committee Proposal 95.[14]  Part of one discussion dealing with scope of review is as follows:

*"Mr. Ford:* [T]he present rule of law with respect, for example, to an appeal which is a one way appeal from the suspension of a policeman under civil service statute or charter provision,   *   *   *   . Is it your thought that now we would be proceeding in a manner where in addition to showing that there was a fair probative value that there would have to be some greater test met by the Civil Service Commission in sustaining its action, or sustaining the action of the removing authority who fired a policeman, for example, for drunkenness?

*   *   *

*"Mr. Krolikowski:* Yes, I think they would.  First of all, this language will negate the possibility of conclusive findings of fact on the part of an administrative agency." 1 Official Record, *Constitutional Convention 1961,* pp 1441, 1442.

Finally, the following excerpt of delegate Boothby's remarks on Proposal 95 suggest that "private right" is to be liberally construed in favor of review:

"Now I am concerned that the people of the state are not faced with the situation after the constitution is adopted that the courts will draw nice distinctions between what a privilege, what a license and what a right is.  I am certain that a person who has had a driver's license and might happen to have it taken away, doesn't understand the distinction between privileges and rights.  He wants to get into court and have decided the question of whether a certain individual acted arbitrarily and without sufficient reasons." 1 Official Record, *Constitutional Convention 1961,* p 1451.

---

14 1 Official Record, *Constitutional Convention* 1961, pp 1441, 1448, 1464.

Thus it is clear that final decisions of the Civil Service Commission sustaining the dismissal of an employee were intended to be within the purview of Const 1963, art 6, § 28.

Appellant Viculin contends that the "direct review" contemplated by art 6, § 28 was intended to change the result of our holding in *In re Fredericks, supra,* and a continuing line of cases not cited here. We held in that case that an attempt by the legislature to create a right of *de novo* review in the circuit court, as opposed to review in the nature of *certiorari,* would be an unconstitutional endeavor to foist nonjudicial functions upon the courts.

Although this Court has not spoken directly on the issue, we have previously interpreted the language "shall be subject to direct review by the courts as provided by law" in the case of *Evans* v. *United States Rubber Company* (1967), 379 Mich 457, 461. The issue in that case was whether the constitution guaranteed an appeal as a matter of right from a decision of an administrative agency. In holding that GCR 1963, 806.2(2), which required leave to appeal, was a proper method of review "provided by law" we said:

"When framers of the Constitution sought to provide for appeal as of right in criminal cases they encountered no difficulty in making the requirement clear and left no cloud of doubt on the subject requiring construction of constitutional language. The plain and unmistakable intent of the Constitution's framers in that regard is expressed in article 1, § 20, as follows:

" 'In every criminal prosecution the accused shall have the right  *  *  *  to have an appeal as a matter of right.' "   379 Mich 457, 461.

Counsel for appellee Civil Service Commission uses this interpretive technique in arguing that art

6, § 28, does not provide for *de novo* review and we quote from and adopt that section of his brief:

"First, the provision is not self-executing and of itself requires nothing. Rather, it requires a mode of direct judicial review ' * * * as provided by law.'

"Second, the provision does no more than to dictate a minimum scope for the review to be provided by law:

" ' * * * whether the [decisions, findings, rulings and orders] are supported by competent, material and substantial evidence on the whole record.'

"To read the quoted language as requiring a trial *de novo* or the taking of additional testimony in Circuit Court does violence to the clear language of the provision and the limited minimum review dictated. Elsewhere in the constitution the drafters were quite careful to utilize the term *de novo* where that form of review was intended. See article V, § 29, the final paragraph of which prescribes the mode and scope of review of decisions of the Civil Rights Commission:

" 'Appeals from final orders of the commission, including cease and desist orders and refusals to issue complaints, *shall be tried de novo* before the circuit court having jurisdiction provided by law.' (Emphasis added)

"The quoted language from article V, section 29, is conclusive evidence that the drafters of the constitution did not construe article VI, section 28, as requiring a trial *de novo*. Article VI, section 28, by its terms applied to agencies such as the Civil Rights Commission which exist ' * * * under the constitution'; if the minimum standard of review therein prescribed were a 'trial *de novo*' there would have been no necessity for specifically describing that mode of review in article VI, section 29, and the final paragraph thereof, quoted above, would be no more than surplusage."

The position of appellee is supported specifically by the Constitutional Convention Record:

"*Mr. Ford:* What does 'direct review' mean in this? I would like a clear definition of the kind of review that a direct review is in the contemplation of this section.

\*        \*        \*

"*Mr. Leibrand:* There might be many kinds of direct review. I would consider that direct review would be a review of the same case and the same parties and the same questions, as distinguished from a collateral review attempted to be attained by something like injunctive relief. Now, there may be very many other patterns of collateral review, but that's an example.

"*Mr. Ford:* Does direct review mean a trial *de novo?*

"*Mr. Leibrand:* It certainly does not. It means a review on the exact record. It is a review of the exact record that was made before the administrative body." 1 Official Record, *Constitutional Convention 1961,* p 1470.

In summary of this section we hold as follows:

1. Art 6, § 28, applies to final decisions of the Civil Service Commission.

2. Art 6, § 28, neither guarantees nor permits *de novo* review of final decisions of the State Civil Service Commission. The scope of review is that stated by the constitution, "whether the same are supported by competent, material and substantial evidence on the whole record."

3. Art 6, § 28 does not guarantee a review in the nature of *certiorari* of "right" but an appeal of such a nature may require "leave" or be automatic as provided by law.[15]

---

[15] Our decision in *Evans* v. *United States Rubber Company, supra,* does not hold that an appeal of "right" in the nature of *certiorari* is *precluded* by any provision of the constitution. We noted that

B. *Applicability of Administrative Procedures Act Provisions for Judicial or Administrative Review.*

Art 6, § 28 contemplates review by the courts "as provided by law." The circuit court held that the provisions for judicial review in both § 8 of the administrative procedures act and RJA § 631 were applicable to these proceedings. Appellant contends that since § 8 of the administrative procedures act was applicable that the provisions regarding internal agency review procedure are also applicable. We hold that neither the provisions for administrative or judicial review of the administrative procedures act were applicable to these proceedings.[16]

The Civil Service Commission is a constitutional body possessing plenary power and may determine, consistent with due process, the procedures by which a state civil service employee may review his grievance. Const 1963, art 11, § 5; *Groehn* v. *Corporation & Securities Commission* (1957), 350 Mich 250, 259; *Plec* v. *Liquor Control Commission* (1948), 322 Mich 691, 694; *Wolski* v. *Unemployment Compensation Commission* (1946), 315 Mich 181, 187. The legislature is consequently without power to regulate the internal procedures of the Civil Service Commission and this fact is recognized in Const 1963, art 4, § 48:

"The legislature may enact laws providing for the resolution of disputes concerning public employees,

although there was provision for appeal from any civil matter as a matter of right, such appeal was provided by statute for civil matters but not with respect to decisions of administrative agencies. Since the court rule, GCR 1963, 806.2(2), required applications for leave to appeal from workmen's compensation decisions, we held merely that the court rule was valid and appeal as of right was not *necessary*, 379 Mich 457, 461.

16 The administrative procedures act as amended effective July 1, 1970, specifically excludes the State Civil Service Commission from its provisions. PA 1969 No 306, effective July 1, 1970 (MCLA § 24-.203(2); Stat Ann 1971 Cum Supp § 3.560[103][2]).

*except those in the state classified civil service."*
(Emphasis added.)

It is plain that if the administrative procedures act was intended to apply to the resolution of disputes in the state classified civil service, it would be in violation of this provision of the constitution. It cannot, therefore, apply to the internal procedures of the Civil Service Commission and since the act is to be read together it cannot be concluded that only § 8 providing for appeal was intended to apply to the Civil Service Commission.[17]

### C. *The Applicability of RJA § 631.*

RJA § 631 provides for review in the circuit court of decisions of boards, commissions or agencies authorized to make rules from which an appeal or other judicial review has not heretofore been provided by law. It provides as follows:

"An appeal shall lie from any order, decision or opinion of any state board, commission or agency, authorized under the laws of this state to promulgate rules and regulations from which an appeal or other judicial review has not heretofore been provided for by law, to the circuit court of the county of which the appellant is a resident or to the circuit court of Ingham county, and such circuit court shall

---

[17] It is also arguable that the Civil Service Commission was not an agency within the meaning of § 1 of the administrative procedures act. Sub 2 of § 1 defines the kind of rule-making power contemplated within the meaning of the administrative procedures act.

"(2) 'Rule' includes every regulation, standard, * * * adopted by an agency, * * * to implement or make specific the law enforced or administered by it or to govern its organization or procedure, but does not include regulations concerning only the internal management of the agency and *not directly affecting the right of or procedures available to the public,* * * * ." (Emphasis added.)

Thus, it appears that the act was intended to apply to those agencies making rules affecting the general public but not to those agencies whose rules relate solely to the internal management or operations of an agency.

have and exercise jurisdiction with respect thereto as in nonjury cases. Such appeals shall be made in the same manner as appeals are made from justice courts, except that no appeal bond is required."

Although this section is somewhat broader than art 6, § 28, both as to entities affected and what may be appealed from, it is nonetheless a method of review "provided by law" applicable to these proceedings.[18]

The only substantial question is whether a constitutional office such as the Civil Service Commission is a commission within the meaning of RJA § 631. In *Bridgehampton School Dist No. 2, Fractional, of Carsonville, Michigan* v. *Superintendent of Public Instruction* (1949), 323 Mich 615, 621, we held that the state superintendent of public instruction was not a board, commission or agency within the meaning of this section because of the constitutional status of the office. That case was decided, however, before the adoption of art 6, § 28 which explicitly provides for review of final decisions of a quasi-judicial nature of such constitutional administrative offices with the method of review provided "by law."[19]

The statute provides that appeals "shall be made in the same manner as appeals are made from justice courts, except that no appeal bond is required." The

[18] Although not applicable to these proceedings, GCR 1963, 706.3 is now the method of review "provided by law." See fn 20, *infra*.

[19] A less substantial argument against the applicability of RJA § 631 is that the definition of "agency" within the act is co-extensive with that in the administrative procedures act so that if the commission was excluded from the latter it would also be excluded from the former. The only authority for this is the fact that the Attorney General, due to the lack of definition in RJA § 631, adopted, as an interpretive aid, the definition of agency in the administrative procedures act as a means of determining whether or not a commission is an agency within the meaning of RJA § 631. Although it may be a useful interpretive technique, we do not believe RJA § 631 was intended to be co-extensive with the administrative procedures act. See 2 OAG, 1956, No 2,406, p 7 (January 13, 1956).

justice courts have now been replaced by district courts, but the rules then applicable to these proceedings will be discussed briefly.

GCR 1963, 706.1 provides that appeals under RJA § 631 shall be governed by GCR 1963, 701 and 702. Under the rules then applicable to justice courts, appellant should have filed his petition for review within 10 days of the decision of the Civil Service Commission and since the petition was filed well beyond the limit counsel for Viculin apparently thought it necessary to contend for the applicability of the appeal provisions of the administrative procedures act which allow 30 days for the filing of a petition for review. The proper procedure would have been to request an order allowing delayed appeal under GCR 1963, 702.1(4). Although there was technical error below jurisdiction was proper in view of the liberal provisions of GCR 1963, 702.1 for delayed appeal and because appellee made no objection either to the time in which the appeal was taken or the failure to secure an order. Any technical error is also vitiated by the abundant confusion surrounding the appeal process from Civil Service determinations.[20]

---

[20] The trial court, the Court of Appeals, and the parties here are not the only ones previously misled by the maze of overlapping statutes. A previous order of this Court implies that review under the administrative procedures act would be proper. See *Civil Service Commission* v. *Local 1342, AFSCME, AFL-CIO* (1969), 382 Mich 782. In that case the Michigan Civil Service Commission suspended dues check-off rights of certain union locals for engaging in prohibited strike activity. The order read:

"Leave to appeal denied * * * without prejudice to any rights defendants and appellants may have to proceed in circuit court under the administrative procedures act." 382 Mich 782; the sequel of the case may be found in 32 Mich App 104 (1971).

To promote uniformity of the appeal process from administrative agencies, this Court adopted, effective July 12, 1971, GCR 1963, 706.3 which will govern all appeals from the Michigan Civil Service Commission in the future:

"3. Appeals from Michigan Civil Service Commission. Appeals from a decision of the Michigan Civil Service Commission shall be filed in the circuit court following the provision for appeals from

Appellant also contends that he is entitled to *de novo* review under RJA § 631 since appeals thereunder are to be taken "in the same manner" as appeals from justice courts from which there is *de novo* appeal. This construction is untenable.

"The last sentence of RJA § 631, that 'Such appeals shall be made in the same manner as appeals are made from justice courts, except that no appeal bond is required,' clearly refers to the mechanical procedures for taking the appeal and not to the scope of review." 3 Honigman & Hawkins, *Michigan Court Rules Annotated,* Authors' Comments to Rule 706, at p 617.

That there is to be no amplification of scope of review under RJA § 631, GCR 706.1, and GCR 701 is clear from the language of GCR 1963, 701.2:

"These rules shall not restrict or enlarge the right of review provided by law, nor make reviewable anything not presently reviewable."

Appeals from justice courts are appeals from a judicial body exercising judicial functions. An administrative agency, though it may be acting in a quasi-judicial capacity in the performance of its function, is nonetheless exercising the non-judicial function of a coordinate branch of government. This essential difference was the basis for our holding in *In re Ferdericks, supra,* that the principle of separation of powers precludes *de novo* review of decisions of the Civil Service Commission. The prin-

administrative agencies as provided in the Administrative Procedures Act of 1969, as amended being MCLA § 24.201 *et seq.*" See 385 Mich xl (1971).

This rule is now the method of review "provided by law" in Const 1963, art 6, § 28. It was adopted pursuant to the power vested in the Supreme Court by Const 1963, art 6, §§ 5 and 13. The administrative procedures act does not apply to internal procedures of the State Civil Service Commission.

ciple of separation of powers is embodied in Const 1963, art 3, § 2:

"The powers of government are divided into three branches: legislative, executive and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution."

As appellee points out, the only *express* constitutional provision for *de novo* review is with respect to the Civil Rights Commission, Const 1963, art 5, § 29. There is no express provision for *de novo* review in art 6, § 28 and it does not constitute a general grant of power to the legislature to provide for a method of review in violation of the constitutional principle of separation of powers. The Michigan Civil Service Commission has plenary and absolute powers in its field. *Plec* v. *Liquor Control Commission* (1948), 322 Mich 691; *Groehn* v. *Corporations & Securities Commission* (1957), 350 Mich 250.

## II. — *Propriety and Sufficiency of the Procedures and Evidence*

The broad question to be answered by a resolution of the subissues below is whether viewing the record as a whole, appellant's discharge was procedurally proper and supported by competent, material and substantial evidence.

## A. *Adequacy of Notice.*

Appellant claims that he did not receive a reasonably definite statement of the charges against him as required by the rules of the Civil Service Commission[21] and due process of law. His report of separation states the reason as follows:

[21] Civil Service Rule 32.2 governs the procedure for dismissal and provides in pertinent part:

"Under date of June 13, 1966, this employee was given a conditional service rating. Under date of December 8, 1966, employee was given a service rating which is unsatisfactory in nature, the substance of which is included in detail with the service rating. Consistent with Civil Service disposition where two consecutive service ratings are less than satisfactory in nature, Mr. Viculin is being dismissed effective January 7, 1967, at 8:00 a.m."

Appellant claims that the report of separation does not constitute adequate notice and a reasonably definite statement of the charges since it merely reiterates the charge of unsatisfactory service. The report of separation, however, makes reference to the service ratings of June 13, 1966,[22] and December 8, 1966,[23] both of which give specific examples of conduct providing the basis for the ratings and make reference to numerous memorandums on the subject which were sent to Mr. Viculin.

We have held that one who is brought into a contest with the government in a quasi-judicial proceeding is entitled, among other things, to be fairly advised of what the government proposes. *Hanson* v. *Michigan State Board of Registration in Medicine* (1931), 253 Mich 601, 607; *Dation* v. *Ford Motor Co.* (1946), 314 Mich 152, 163 *et seq.*; *Napuche* v. *Liquor Control Commission* (1953), 336 Mich 398, 404; *Milford* v. *People's Community Hospital Authority* (1968), 380 Mich 49. See also *Morgan* v. *United States* (1938), 304 US 1 (58 S Ct 773, 82 L Ed 1129); *Gonzales* v. *United States* (1955), 348 US 407 (75 S Ct 409, 99 L Ed 467).

"32.2 PROCEDURE. — Whenever an appointing authority considers it necessary to dismiss or suspend an employee, he shall:

"32.2a Notify the employee in writing giving specific reasons for the action."

[22] Six pages of very detailed analysis of problems, Appellant's Appendix 112a–118a.

[23] Two pages of specific charges, Appellant's Appendix 143a–145a.

The two rating reports, which Viculin acknowledged by his signature as having received, charge seven specific categories of unsatisfactory work. Incorporated within the charges are references to numerous memorandums to Mr. Viculin giving examples of specific unsatisfactory work within each category. Although it might have been better to be more specific about the charges in the report of separation, the incorporation by reference of the underlying factual basis in the rating reports previously received by Viculin did, in this case, satisfy the requirement of reasonable and adequate notice. There was no claim here that appellant did not receive the rating reports or memorandums nor does he claim any denial of access to these materials.

B. *Adequacy of the Opportunity to Meet the Agency's Case.*

Appellant claims that his ability to cross-examine and "meet the agency's case" was hampered by the Commission's alleged failure to produce certain documents. The Commission's charges of faulty case work were based both upon original case files which in the course of business had been sent to the office in Baltimore and on certain skeleton files maintained by the department. On January 10, 1967, one day before the hearing, Viculin's attorney wrote to the Civil Service investigator and requested all Department of Education work sheets of cases relied on by the department for their determination that appellant's work was unsatisfactory.

During the hearing appellant abandoned his claim that the original case files were necessary as the following indicates:

"*Chairman Callard:* Well, there seems to be two kinds of files here. One sets [sic] in Baltimore and one sets [sic] in Hams' office or somebody's office. Let's clarify that.

*"Mr. Sablich [attorney for defendant]*: We don't want the Baltimore files. We want the files that the department have. [*sic*] They've got skeleton files. Mr. Eaton so indicated."

Although the unit supervisor didn't act as quickly as possible on receipt of the request for these skeleton files the day before the hearing, the record suggests that during the morning of the hearing the supervisor had his staff begin collecting these skeleton files for Viculin and his attorney to review over the noon recess.

For an adversary hearing of this nature to have any meaning, the employee must have a reasonable opportunity to meet the agency's case. For this reason, reasonable and timely requests for lists of witnesses and inspection of documents should be complied with by the agency.[24] In this case, the record shows that requests for witnesses and early requests for inspection were complied with but that the supervisor made no effort to round up the "skeleton files" upon receipt of the request the day before the hearing.

---

[24] Because the issue was not properly presented and because it is not determinative in this case we are not prepared to hold, as a matter of law, that some form of prehearing discovery must be provided by an agency in every case. We note, however, that the principle of prehearing discovery in administrative adjudicatory proceedings has received broad approval in recent years. See *The Temporary Administrative Conference Final Report*, Recommendation Number 30 (1962); Tomlinson, *Discovery and Agency Adjudication*, 1971 Duke Law Journal 89 (1971); 1 Davis, *Administrative Law*, § 7.18 (1970 Supp).

In *Shively* v. *Stewart* (1966), 65 Cal 2d 475 (421 P2d 65, 55 Cal Rptr 217), the California Supreme Court held that an agency must provide prehearing discovery even in the absence of statutory requirement. The court adopted the rule as a matter of judicial common law and noted the evolvement of the right to discovery in civil and criminal cases under the common law. The court pointed out that the administrative agency had the resources of the state at its command to enable it to secure complete information and prepare its case before filing an accusation and felt that the accused in a disciplinary or removal proceeding should have a right of discovery to balance the scales.

Although the agency should have attempted to comply before the issue was raised during the hearing, it is also noted that the request was not timely made. Absent proof that these skeleton files were not produced over the recess, it must be assumed that appellant was not prejudiced in his ability to cross-examine witnesses and meet the agency's case.

C. *The Admission of Evidence of Previous Conditional Service Ratings.*

At the hearing a transcript of a conditional service rating received by Viculin in 1964 and eventually reversed by the Commission was introduced. In addition, his unit supervisor testified that Viculin received two conditional service ratings in 1961. The essence of appellant's argument is that it does not comport with due process to charge current misconduct and then to introduce at the hearing proofs relating to a prior period for which unsatisfactory ratings were submitted. Appellant argues that the hearings should have been confined to the facts leading to the two unsatisfactory ratings without a review of the employee's entire work record spanning nine years. In this respect the opinion of Justice Smith in *Groehn* v. *Corporation & Securities Commission* (1957), 350 Mich 250 is cited:

"Can a man be punished today for actions of yesterday that were neither dishonest nor fraudulent nor disobedient at that time? We say not. If his actions were wrong yesterday he can be punished today. If they are wrong today he can be punished today or tomorrow. But he cannot be punished today because yesterday's actions (complying with the then-applicable regulations) do not meet today's standards." 350 Mich 250, 267.

To hold that the mere introduction of this evidence, however, would make unlawful a determination of *present* unsatisfactory service based upon

substantial, competent and material evidence of *present* misconduct would misconstrue the function of this Court.

The standards for admission of evidence in administrative proceedings are not the same as those in courts of law.  See *e.g., Dillon* v. *Lapeer State Home and Training School* (1961), 364 Mich 1, 8; *Napuche* v. *Liquor Control Commission* (1953), 336 Mich 398, 406.[25]  The Civil Service Commission as a constitutional body possessing plenary power to determine the procedure for review of employee dismissal established a rule of evidence as follows:

"33.10 CONDUCT OF HEARINGS.—The hearing officer or hearing board shall conduct the hearing informally, obtaining, considering and weighing, all evidence that fair-minded men, in the conduct of their important affairs, would obtain and consider."

Although the Commission may receive and consider evidence which would not be competent in court proceedings, the decision must be sustained if supported by competent, material and substantial evidence on the whole record, *Dillon* v. *Lapeer State Home and Training School, supra,* 8 quoting 42 Am Jur, Public Administrative. Law, § 132.[26]

A review of the testimony and department exhibits reveals substantial, material and competent evidence to support the findings of the Hearing Board and

[25] See also 1 Wigmore, *Evidence* (3d ed), §§ 4A, 4B, 4C pp 25–95; 2 Davis, *Administrative Law*, § 14.00 *et seq.* (1970 Supp); Gellhorn, *Rules of Evidence & Official Notice in Formal Administrative Hearings,* 1971 Duke LJ 1 (1971).

[26] The cited Am Jur section has been superseded by 2 Am Jur 2d, Administrative Law, § 393, p 199.

In *Falsone* v. *United States* (CA5, 1953), 205 F2d 734, 742, the Court said:

"For, speaking generally, the system of rules of evidence in force for trials by jury or even in courts of equity is not applicable, either by historical precedence, or by sound practical policy, to inquiries of facts determinable by administrative tribunals or officers."

the charges of the appointing authority. Although we are aware of the potential prejudice in consideration of an employee's entire work record, there was no error here requiring reversal. One of appellant's defenses before the Hearing Board was that the discharge was motivated by a personal animosity between himself and his supervisor, Curtis Eaton, and that his work record under previous supervisors was satisfactory. For this reason, evidence of unsatisfactory ratings or charges of unsatisfactory work under previous supervisors would be relevant and material.

D. *Sufficiency of the Findings of the Civil Service Commission and Hearing Board.*

Appellant claims that the Civil Service Commission and the Hearing Board are bound by the standards for findings in § 7 of the administrative procedures act. For reasons previously stated, the administrative procedures act provisions regarding findings are not applicable to this case. The rules of the Civil Service Commission regarding findings are as follows:

"33.10 CONDUCT OF HEARING.— * * * The hearing officer or hearing board shall make findings of fact and, as may be appropriate, render a decision, issue an order, or make a recommendation to the commission."

As appellant points out, one of the purposes of any requirement of findings is to provide a basis for judicial review. He cites *WAIT Radio* v. *Federal Communications Commission* (1969), 135 App DC 317 (418 F2d 1153):

" 'Judicial review of the Commission's orders will therefore function accurately and efficaciously only if the commission indicates fully and carefully the

methods by which, and the purposes for which it has chosen to act  *  *  *  .'

"Two strands of doctrine apply to the judicial review of administrative determinations. First is the principle that an agency or commission must articulate with clarity and precision its findings and the reasons for its decisions. The importance of this requirement is inherent in the doctrine of judicial review which places only limited discretion in the reviewing court."   135 App DC 317, 320 citing *Permian Basin Area Rate Cases* (1968), 390 US 747, 792 (88 S Ct 1344, 1373; 20 L Ed 2d 312).

Appellant contends that the findings of the Civil Service Hearing Board, reproduced in the facts above, do not meet this standard and further that the Civil Service Commission itself made no findings.

After the meeting on April 11, 1967, the Commission informed Mr. Viculin and his attorney of their decision by letter as follows:

"  *  *  *  after hearing all parties concerned and after discussion, the Commission, on motion duly made and supported, affirmed the Hearing Board's decision."

Rule 33.10 cited above requires findings only by the hearing officer or Hearing Board and it is apparent here that these findings were affirmed and for purposes of judicial review were adopted by the Commission.

We believe *WAIT Radio* v. *Federal Communications Commission, supra,* correctly states principles that should govern administrative hearings and orders and the reasons therefor. We commend them to the Civil Service Commission. Although the Civil Service Hearing Board and the Civil Service Commission could have been more articulate in presenting their findings and the basis for their decisions,

there is sufficient compliance in the record for our decision.

"Courts are indulgent toward administrative action to the extent of affirming an order where the agency's path can be 'discerned' even if the opinion 'leaves much to be desired.' "[27]

---

[27] *WAIT, supra,* 320, citing *Colorado Interstate Gas Co.* v. *Federal Power Commission* (1945), 324 US 581, 585 (65 S Ct 829, 89 L Ed 1206); *Pikes Peak Broadcasting Company* v. *Federal Communications Commission* (1969), 137 App DC 234, (422 F2d 671), *cert den,* 395 US 979 (89 S Ct 2134, 23 L Ed 2d 767) (1969).

See also *Greater Boston Television Corporation* v. *Federal Communications Commission* (1971), 143 App DC 383, 393 (444 F2d 841, 851) in which the supervisory function of the judiciary was well summarized by Judge Leventhal:

"Its supervisory function calls on the court to intervene not merely in case of procedural inadequacies, or bypassing of the mandate in the legislative charter, but more broadly if the court becomes aware, especially from a combination of danger signals, that the agency has not really taken a 'hard look' at the salient problems, and has not genuinely engaged in reasoned decision-making. If the agency has not shirked this fundamental task, however, the court exercises restraint and affirms the agency's action even though the court would on its own account have made different findings or adopted different standards. Nor will the court upset a decision because of errors that are not material, there being room for the doctrine of harmless error. If satisfied that the agency has taken a hard look at the issues with the use of reasons and standards, the court will uphold its findings, though of less than ideal clarity, if the agency's path may reasonably be discerned, though of course the court must not be left to guess as to the agency's findings or reasons." (Footnotes omitted.)

Affirmed.

T. M. KAVANAGH, C. J., and BLACK, ADAMS, T. E. BRENNAN, T. G. KAVANAGH, and SWAINSON, JJ., concurred with WILLIAMS, J.